**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**CHARLES BARKER**
**AND MELISSA BARKER,**
**INDIVIDUALLY AND ON**
**BEHALF OF ALL SIMILARLY**
**SITUATED INSUREDS,**

**Plaintiffs,**

**v.** **Civil Action No. 2:26-CV-0000287**
**Honorable Irene C. Berger**

**STATE FARM FIRE AND CASUALTY**
**COMPANY, GEORGE A. BARBERA, and**
**Defendant JOHN DOE CLASS of**
**PRESENTLY UNIDENTIFIED STATE FARM**
**CLAIMS ADJUSTERS,**

**Defendants.**

## AMENDED COMPLAINT

**COME NOW** the Plaintiffs, Charles Barker and Melissa Barker (collectively the "Barkers"), individually and on behalf of all similarly situated insureds, who for their *Amended Complaint* against Defendants, State Farm Fire and Casualty Company ("State Farm") and George A. Barbera ("Barbera") (referred to collectively as the "State Farm Defendants") and Defendant John Doe Class of Presently Unidentified Class of State Farm Claim Adjusters ("Defendant Class of Adjusters"), state as follows:

### Common Allegations

1. At all times related to this Complaint, the Barkers were the owners and residents of 1034 Littlesburg Road, Bluefield, West Virginia, 24071 ("the Insured Property").

2. Defendant State Farm is a foreign corporation with its principal place of business in Bloomington, Illinois, licensed to do business and actively engaged in the business of insurance in the State of West Virginia, including in Kanawha County, West Virginia.

3. Upon information and belief, Defendant Barbera is, and all times relevant hereto has been, an employee of Defendant State Farm, who resides in the State of West Virginia, and who is, upon information and belief, licensed as an insurance adjustor in West Virginia, and engaged in the business of insurance in West Virginia, including in Kanawha County, West Virginia.

4. Defendant Class of Adjusters are the class of presently unidentified State Farm claims adjusters (besides Defendant Barbera) who were employed by Defendant State Farm and participated, during the period of May 28, 2016 to the present, in Defendant State Farm's unlawful business practice of failing and refusing to pay the full amount necessary for the repair or replacement of the damage to the real property of Defendant State Farm's insureds arising from real property losses covered under homeowners policies of insurance issued by Defendant State Farm

5. Inasmuch as Defendant Barbera was an employee and agent of Defendant State Farm at all times relevant to the acts and omissions addressed by this Complaint, Defendant State Farm is chargeable with his conduct under the legal and equitable doctrines of vicarious liability, specifically including, but not limited to the doctrines of employer/employee, master/servant, principle/agent, non-delegable duty, respondeat superior, and/or insurance regulatory law.

6. At all relevant times, the State Farm Defendants were engaged in the business of insurance in the State of West Virginia, as defined by Chapter 33 of the West Virginia Code, and they are, therefore, subject to the laws and the Rules and Regulations of West Virginia.

7. On April 24, 2026, the State Farm Defendants removed this action pursuant to the Class Action Fairness Act of 2005 (“CAFA”), *28 U.S.C. §§ 1332(d)* and *1453*.

## FACTS

8. At all relevant times, Defendant State Farm had in force and effect a home insurance policy identified as Policy No. 48-M178-9 (“the State Farm Policy”) issued to Plaintiffs, for the Insured Property.

9. Under the State Farm Policy, Plaintiffs had Coverage A – Dwelling, with limits of $306,000.00; Coverage B – Personal Property, with limits of $229,500.00; and Coverage C – Loss of Use, with limits of $91,800.00.

10. All premiums were paid for the State Farm Policy, and Plaintiffs complied with all of the other material terms, conditions, and requirements of the State Farm Policy.

11. On or about November 20, 2025, a fire occurred at the Insured Property in the early afternoon while Plaintiffs and their children were home putting up Christmas decorations (“the Fire Loss”).

12. As a direct and proximate result of the Fire Loss at the Insured Property, Plaintiffs’ dwelling and personal property were damaged and/or destroyed.

13. As a result of the Fire loss, Plaintiffs were required to turn off the main water source and the electric meter was pulled by the local fire department as part of the necessary fire suppression efforts.

14. As a result of the Fire Loss, the dwelling at the Insured Property was rendered uninhabitable for the Plaintiffs and their children.

15. Under the terms of the Policy and the laws of West Virginia, Defendant State Farm is, and has been, obligated to pay within the limits of Coverage A – Dwelling for the damage to the Plaintiffs' residential dwelling. In particular, under "Section I - Loss Settlement," the State Farm Policy provides under the applicable "A1-Replacement Cost Loss Settlement-Similar Construction" provision:

> **We** will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION-I PROPERTY COVERAGES, COVERAGE A – DWELLING**. There will be no deduction for depreciation.

16. Under the terms of the State Farm Policy and the laws of West Virginia, Defendant State Farm is, and has been, obligated to pay for the Fire Loss to Plaintiffs' personal property within the limits of Coverage B.

17. Under the terms of the State Farm Policy and the laws of West Virginia, Defendant State Farm is, and has been, obligated to pay for Plaintiffs' additional living expenses arising from the Fire Loss, up to the limits of Coverage C – Loss of use.

18. Following the Fire Loss, Plaintiffs provided State Farm with timely notification of the Fire Loss and of their claim for damages.

19. Upon information and belief, Defendant State Farm assigned the Plaintiffs' claim arising from the Fire Loss to Defendant Barbera for investigation and handling.

20. However, Plaintiffs were informed by Defendant State Farm that Defendant Barbera was out of town until December 2, 2025, and that no one would be able to review the Insured Property and their damages for more than ten (10) days.

21. During this delay, Plaintiffs were provided no payments by State Farm to protect their home from further damage arising from the Fire Loss.

22. During this delay, Plaintiffs' home remained wet from the firefighting efforts, which led to additional damage to the Insured Property.

23. Defendant Barbera contacted Plaintiffs regarding the Fire Loss on December 1, 2025, but did not indicate when he was going to inspect the Insured Property.

24. On December 11, 2025, the State Farm Defendants issued a partial payment of $2,292.32 for additional living expenses while the Insured Property was uninhabitable and Plaintiffs were left with nowhere to live.

25. Defendant Barbera finally conducted an inspection of the Insured Property on December 22, 2025, over a month after the Fire Loss.

26. During the inspection, Defendant Barbera told Plaintiffs that Defendant State Farm would not pay for electrical damages related to the Fire Loss, related inspections, or for the cost to replace the electrical meter pulled by the local fire department due to the fire.

27. Defendant Barbera also informed Plaintiffs that Defendant State Farm would not pay for any required code upgrades related to damages from the Fire Loss, despite the code upgrade coverage provided by the State Farm Policy.

28. Plaintiffs explained to Defendant Barbera that they would be unable to repair the Insured Property if Defendant State Farm would not pay for the damage to Plaintiffs' electrical system at the Insured Property caused as a result of the Fire Loss.

29. Sometime after December 2, 2025, but prior to Defendant Barbera's first visit to the Insured Property, the State Farm Defendants sent Servpro to inspect the Insured Property's damages from the Fire Loss, including the damages to Plaintiffs' dwelling and personal property.

30. Servpro informed Plaintiffs that there was extensive smoke damage throughout the Insured Property; that the first floor needed to be stripped to the studs; that all floors, trim, molding, and insulation were damaged; and that at least one bedroom upstairs needed to be gutted.

31. Servpro told Plaintiffs that it could begin the necessary gutting work to the Insured Property and the handling of Plaintiffs' personal property "pretty quickly."

32. However, during Defendant Barbera's December 22, 2025, inspection, he represented to Plaintiffs that Servpro was unavailable to perform the necessary work at the Insured Property.

33. Plaintiffs were later informed by Servpro that Defendant Barbera did not want to spend the money to perform the work identified by Servpro at the Insured Property as necessary to repair the damage arising from the Fire Loss.

34. On December 30, 2025, Defendant Barbera provided an estimate on behalf of Defendant State Farm for the damage to the dwelling at the Insured Property and represented that it would cost only $85,707.35 to repair Plaintiffs' Insured Property.

35. The State Farm Defendants' estimate was inadequate and insufficient to repair the Insured Property and did not reflect the reasonable and necessary cost to repair or replace the Insured Property with similar construction as expressly required under the State Farm Policy.

36. Defendant State Farm's estimate was created by Defendant Barbera using a program known as Xactimate, as directed and required by Defendant State Farm.

37. Defendant Barbera represented to Plaintiffs that State Farm had "tools to estimate and to, you know, make sure that we're paying fair and reasonable amounts." Upon information and belief, the "tool" referenced by Defendant Barbera was Xactimate.

38. When an estimate is created using Xactimate, the program provides the user with a choice to price work based upon restoration, service or remodeling environments ("Restoration") or based upon a new construction environment ("New Construction").

39. For virtually every construction line item priced by Xactimate, the cost of that item for New Construction is lower than for Restoration.

40. There are many reasons why the cost of Restoration is higher than that of New Construction, such as the inclusion of the cost of demolition and preparation necessitated by the existing damage from fire or another occurrence.

41. The applicable standard in the insurance industry is to price reconstruction of a damaged property using the Restoration option, which is more costly than New Construction. Doing so ensures that the amount calculated will fully address the reasonable and necessary cost to repair and/or replace the damaged property with similar construction. In addition, doing so affords the insureds' interests at least as much consideration as the interests of the insurance company by avoiding the creation and use of artificially low estimates which do not address the actual and necessary cost of rebuilding or repairing the insured property. Otherwise, the contractual right of the insured to receive an amount which will be sufficient to rebuild or repair their property would be infringed.

42. In preparing the basis for the estimate and payment for the repair of Plaintiffs home, Defendant Barbera used New Construction pricing, which was knowingly insufficient to repair Plaintiffs' home, as the repairs necessary to the Insured Property were not "new construction." As a result, the State Farm Defendants' estimate and payment did not reflect the actual reasonable and necessary cost to repair or replace the Insured Property with similar construction as required by the State Farm Policy.

43. Upon information and belief, Defendant State Farm trained and/or instructed Defendant Barbera to use New Construction pricing as the basis for estimates and payments for damage to real property losses in West Virginia to save Defendant State Farm money.

44. Upon information and belief, Defendant State Farm's business practice of using New Construction pricing which is inadequate to repair the damage to insureds' homes ,as opposed to Restoration pricing, knowingly results in Defendant State Farm's insureds, such as Plaintiffs, receiving less than the amount necessary to complete the repairs of their damages arising from losses covered by Defendant State Farm's policies.

45. The State Farm Defendants' actions of basing estimates and payments for repairs on New Construction pricing was a purposeful attempt by the State Farm Defendants to reduce the repair payments due to insureds for the coverages owed under State Farm homeowners policies and, thereby, impair the insureds' contractual right to receive the full amount for the reasonable and necessary cost to actually repair or replace their property with similar construction.

46. On December 30, 2025, The State Farm Defendants issued a $84,707.35 payment to Plaintiffs for their dwelling damages, and the necessary demolition and cleanup from the Fire Loss at the Insured Property. The State Farm payment was not sufficient to actually complete the necessary repairs. As such, State Farm failed to pay the reasonable and necessary cost to repair or replace the Plaintiffs' property with similar construction, in express violation of its duties under the State Farm Policy.

47. The State Farm Defendants later sent out an HVAC consultant to inspect the Insured Property and the consultant opined that new ductwork was necessary but that the compressor could be cleaned.

48. On January 15, 2026, the State Farm Defendants issued a payment of $6,314.06 to Plaintiffs for HVAC ductwork and compressor cleaning at the Insured Property. However, the amount was not sufficient to cover the reasonable and necessary cost to repair or replace the Plaintiff's property with similar construction as required by the State Farm Policy.

49. While attempting to complete a personal property inventory and clean up the Insured Property following the Fire Loss, Plaintiff Charles Barker experienced sores in his nose and headaches for weeks, which required him to seek medical treatment on January 22, 2026, and February 2, 2026, when he was told his condition occurred due to exposure to the environmental conditions at the Insured Property caused by the Fire Loss. He was advised to stay out of the Insured Property until his nose sores and headaches resolved.

50. Because of the Fire Loss, Plaintiffs' family of six was split up, with their fifteen-year-old son and one dog having to live with another family member while Plaintiffs were stuck in a hotel room.

51. The State Farm Defendants only agreed to provide Plaintiffs with one hotel room for two adults, a three-year-old toddler, and a dog despite the fact that the State Farm Policy provided Additional Living Expense coverage intended to pay for the additional expenses necessary for Plaintiffs to continue to live their normal lifestyle and to be together as a family.

52. The hotel room was insufficient for Plaintiffs to live in a comparable living situation to the Insured Premises with children and their dogs.

53. On or about January 30, 2026, Plaintiffs secured an estimate from Southwest Restoration, LLC for the cost to complete the restoration work at the Insured Property as recommended by ServPro, which indicated that just the initial demolition and cleanup for the dwelling and contents at the Insured Property would cost $48,836.26.

54. Bobby English, a contractor retained by Plaintiffs, informed Plaintiffs that the $85,707.35 estimate of the State Farm Defendants was insufficient to repair the Insured Property with similar construction.

55. As a result, Mr. English attempted to contact Defendant Barbera as Plaintiffs' contractor to discuss the actual cost to repair the Insured Property.

56. Defendant Barbera never responded to Mr. English's emails requesting more information and answers to his questions and only attempted to call him once on January 15, 2026, when Mr. English was unavailable.

57. Plaintiffs were unable to begin repairs, or to locate anyone to begin repairs, until the electrical service at the Insured Property could be restored.

58. Plaintiffs communicated this issue to Defendant Barbera, who informed Plaintiff that the State Farm Defendants would not pay to restore the electrical service at the Insured Property as "there was no fire damage to [Plaintiffs'] power warranting taking out the meter base. That was a mistake on the fire department, but it doesn't mean that we have to pay to change it…[n]o matter what anyone says…there's no fire damage to the electrical that would require an upgrade… and that's the reason why we can't pay for it."

59. Additionally, Defendant Barbera stated, "you've got that electricity that [Defendant State Farm] will not let me pay you for because it wasn't damaged."

60. Regarding Plaintiffs' personal property, Defendant Barbera told Plaintiffs, on behalf of Defendant State Farm, to "take all of your contents out and throw them in the trash can."

61. Despite acknowledging that all of Plaintiffs' personal property was damaged and destroyed, Defendant State Farm has not provided payment for the full amount of Plaintiffs' personal property loss.

62. Defendant Barbera refused to speak with Plaintiffs' contractor, Mr. English, regarding the work that needed to be completed to repair the Insured Property with similar construction.

63. Due to the failure and refusal of the State Farm Defendants to consider Plaintiffs' concerns or the concerns of their contractor, Plaintiffs were forced to retain counsel to move forward with their claim.

64. On February 10, 2026, Gilbert Estimating Company inspected the Insured Property and provided an estimate of $220,652.33 for the repair of Plaintiffs damages from the Fire Loss, addressing the cost for cleanup, demolition, and the restoration of the Insured Property. Said amount reflects the reasonable and necessary cost to repair or replace Plaintiffs' property with similar construction based on conditions that could be identified as the time of the inspection.

65. Gilbert's estimate confirms that the State Farm Defendants' estimates were woefully inadequate to complete the necessary repairs at the Insured Property and do not reflect the reasonable and necessary cost to repair or replace Plaintiffs' property with similar construction.

66. Defendants' failure and refusal to provide full payment to Plaintiffs for their damages caused by the Fire Loss has proximately resulted in additional damage to the Insured Property.

67. Even after eventually receiving the State Farm Defendants' woefully inadequate payment for the dwelling damages caused by the Fire Loss, Plaintiffs were unable to begin repairs because the amount provided was clearly insufficient to complete the necessary repairs to the Insured Property and did not reflect the reasonable and necessary cost to repair or replace Plaintiffs' property with similar construction.

68. Due to the State Farm Defendants' failure and refusal to fully compensate Plaintiffs under the State Farm Policy, the Insured Property is suffering additional damage.

69. Plaintiffs are, and have been, entitled to additional living expense (ALE) coverage sufficient to place them in a living position similar to their living circumstances before the Fire Loss, and the current hotel room Plaintiffs are staying in with part of their family does not suffice to provide similar living space for Plaintiffs' family.

70. As outlined above, the State Farm Defendants failed and refused to conduct a thorough, fair, and objective investigation of Plaintiffs' claims and the extent of their damages and failed and refused to complete payment of the full benefits due the Plaintiffs in connection with the Fire Loss by only offering to pay a lesser amount based upon an artificially low estimate which was not sufficient to cover the reasonable and necessary cost to repair or replace Plaintiffs' property with similar construction.

71. As outlined above, the State Farm Defendants failed and refused to acknowledge and act promptly upon communications from Plaintiffs regarding their claims and the Fire Loss and failed to respond in a timely manner to communications from the Plaintiffs and/or their representatives.

72. Defendant State Farm failed and refused to adopt and/or implement reasonable standards for the prompt investigation of Plaintiffs' claims and refused to pay Plaintiffs' claims without conducting a reasonable investigation based upon all available information.

73. The State Farm Defendants failed and refused to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim even though Defendant State Farm's liability to Plaintiffs was reasonably clear, in violation of *W.Va. Code §33-11-4(9)(f)*.

74. The State Farm Defendants have forced Plaintiffs to institute this litigation to recover the amounts due to them under the State Farm Policy.

75. The State Farm Defendants failed and refused to properly adjust, handle, and timely pay Plaintiffs' claim for benefits due and owing under the State Farm Policy, which has caused Plaintiffs significant economic and non-economic damages including but not limited to additional damage to their property, loss of the use of the insurance benefits to which they were entitled, interest on the amounts which should have been paid, additional living expenses and annoyance and inconvenience.

**Count I - Declaratory Judgment/Breach of Contract (Defendant State Farm)**

76. Plaintiffs hereby restate and re-allege, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 75 of this Amended Complaint, as though fully restated and made a part of Count I of this Amended Complaint.

77. At the time of the Loss, the Insured Property was insured under the State Farm Policy, which provided Coverage A – Dwelling, with limits of $306,000.00; Coverage B – Personal Property, with limits of $229,500.00; and Coverage C – Loss of Use, with limits of $91,800.00.

78. The State Farm Policy obligated Defendant State Farm to pay Plaintiffs the full cost to repair the Insured Property from damage resulting from the Fire Loss. Specifically, the State Farm Policy required State Farm to pay Plaintiffs the reasonable and necessary cost to repair or replace Plaintiffs' property with similar construction.

79. The State Farm Policy also obligated Defendant State Farm to pay Plaintiffs for their lost and damaged personal property damaged by the Fire Loss.

80. The State Farm Policy further obligated Defendant State Farm to pay Plaintiffs for Coverage C Loss of Use for their additional living expenses incurred as a result of the Fire Loss.

81. Inherent in the State Farm Policy was a duty for Defendant State Farm to act in good faith and to afford its insureds' interests at least as much consideration as State Farm afforded its own interests.

82. Plaintiffs, at all relevant times, paid the premiums due to Defendant State Farm and otherwise complied with the material terms and conditions of the State Farm Policy.

83. Defendant State Farm has failed and refused to pay Plaintiffs the reasonable and necessary cost to repair or replace their property with similar construction, has failed and refused to pay Plaintiffs for all of their loss of personal property, and has failed and refused to pay Plaintiffs for the additional living expenses necessary to permit Plaintiffs and their family to continue living their normal lifestyle, including living together as a family.

84. Defendant State Farm's failure and refusal to provide necessary first-party assistance to Plaintiffs, its failure and refusal to pay Plaintiffs their applicable and due insurance benefits, and its failure and refusal to pay Plaintiffs the full amount for their damages resulting from the Fire Loss constitute a breach of the State Farm Policy which has proximately caused the Plaintiffs to incur continuing economic and non-economic damages. In that regard, State Farm's insistence upon using New Construction pricing as the basis for its estimates and payments for the cost of repairing Plaintiffs' property resulted in a knowingly insufficient payment which deprived Plaintiffs of their contractual right to receive the amount required to pay the reasonable and necessary cost to repair or replace Plaintiffs' property with similar construction. Defendant State Farm's knowing use of the deficient estimate also breached State Farm's contractual duty to act in good faith and to afford Plaintiffs' interests at least as much consideration as its own, inherent in the State Farm Policy. To be clear, Plaintiffs are not alleging that the State Farm Policy required Defendant State Farm to use a particular or specific estimating program or a particular setting

within such a program to estimate Plaintiffs' damages. Instead, Plaintiffs assert that Defendant State Farm's decision to use any program or setting that it knew would create an artificially low and inadequate estimate that would not fully address the reasonable and necessary cost to repair and/or replace Plaintiffs' property with similar construction breached the express terms of the State Farm Policy and Defendant State Farm's duty of good faith and fair dealing inherent in every contract under West Virginia law.

85. As a direct and proximate result of Defendant State Farm's breach of its contractual duties under the State Farm Policy, Plaintiffs are entitled to recover compensatory damages from Defendant State Farm for their net economic loss and lost interest; their attorneys' fees and litigation expenses associated with pursuing this civil action; and their other economic and non-economic consequential damages arising from Defendants' conduct.

**Count II - Common-Law "Bad Faith" (Defendant State Farm)**

86. Plaintiffs hereby restate and re-allege, as though fully incorporated into Count II, each and every allegation contained within Paragraphs 1 through 85 of this Amended Complaint as though fully restated and made a part of Count II of this Amended Complaint.

87. Through Defendant State Farm's actions described herein and its refusal to provide necessary first-party assistance to Plaintiffs, its refusal to pay Plaintiffs their applicable insurance benefits, and its refusal to pay Plaintiffs the reasonable and necessary cost to repair or replace their property with similar construction, Defendant State Farm breached its common-law duty of good faith and fair dealing to Plaintiffs, such that its conduct amounts to "common-law bad faith."

88. In particular, through its actions and refusal to pay Plaintiffs, Defendant State Farm breached its duty of good faith:

a) By failing to conduct an adequate, timely and thorough investigation to determine the policy benefits due and owing to Plaintiffs in connection with the Fire Loss;

b) By failing to communicate to Plaintiffs the benefits to which they were entitled under the State Farm Policy;

c) By ignoring the damages observed by Defendant State Farm and its representatives during their inspections of the Insured Property and by failing to pay Plaintiffs for the reasonable and necessary cost to repair or replace their property with similar construction;

d) By intentionally misrepresenting the cost to repair the Insured Property and return it to its pre-loss condition with similar construction;

e) By misrepresenting facts related to the coverage available for Plaintiffs' damages under the State Farm Policy;

f) By refusing to pay applicable policy benefits due to Plaintiffs under the State Farm Policy without a factual or legal basis;

g) By failing and refusing to timely respond to communications from Plaintiffs which reasonably required a response;

h) By forcing Plaintiffs to file this action to recover the benefits owed to them under the State Farm Policy; and

i) By favoring its own interests over the interests of its insureds.

89. As a direct and proximate result of Defendant State Farm's "bad faith" and its breach of its common law duty of good faith and fair dealing, Plaintiffs are entitled to recover from Defendant State Farm their economic, non-economic, and consequential damages, including the attorney fees and the costs Plaintiffs have incurred and will incur as a result of Defendant State Farm's conduct.

90. From the initial notification of the Plaintiffs' claims, Defendant State Farm has acted maliciously and intentionally, predetermined to delay and refuse Plaintiffs' claims under the State Farm Policy. In particular, Defendant State Farm has denied and refused to properly pay the Plaintiffs' claims even though Defendant State Farm knew the claims were proper and intentionally

engaged in an unlawful business practice to present and represent to Plaintiffs an estimate which it knew did not cover or address the reasonable and necessary cost to repair or replace Plaintiff's property with similar construction.

91. Defendant State Farm's conduct, as described above, was intentional and malicious, intended to benefit Defendant State Farm while causing damage to Plaintiffs and, therefore, Plaintiffs are entitled to an award of punitive damages against Defendant State Farm.

**Count III - Unfair Trade Practices**
**(State Farm Defendants and Defendant Class of Adjusters)**

92. Plaintiffs hereby restate and re-allege, as though fully incorporated into Count III, each and every allegation contained within Paragraphs 1 through 91 of this Amended Complaint as though fully restated and made a part of Count III of this Amended Complaint.

93. The State Farm Defendants had adequate notice of Plaintiffs' claim and had adequate time to investigate any insurance coverage issues and were not in any way prejudiced by the timeliness or lack of timeliness of notification of Plaintiffs' claim.

94. The State Farm Defendants violated W.Va. Code 33-11-4(9)(a) by failing to disclose to Plaintiffs that they were entitled to payment for the additional living expenses necessary for Plaintiffs and their family to continue to live together in their normal lifestyle and by intentionally misrepresenting the amount necessary to pay the reasonable and necessary cost to repair or replace Plaintiffs' property with similar construction. Upon information and belief, the State Farm Defendants violated W.Va. Code 33-11-4(9)(a) in the same fashion in connection with the claims of a similarly situated class of other West Virginia insureds over the past ten years who had similar insurance coverage through State Farm and who sustained damage to their real property located in West Virginia and who were advised by State Farm that its estimates based upon New Construction pricing reflected the full amount necessary to cover the reasonable and

necessary cost to repair or replace their property with similar construction when said estimates were knowingly inadequate to do so. The State Farm Defendants' conduct with respect to a class of similarly situated West Virginia insureds constitutes a general business practice of the State Farm Defendants.

95. The State Farm Defendants violated W.Va. Code 33-11-4(9)(a) by misrepresenting facts related to the Fire Loss damages to Plaintiffs' home, the extent of Plaintiffs' damages, and the coverages available under the State Farm Policy to fully compensate Plaintiffs for their damages caused by the Fire Loss at the Insured Property, including the cost to restore electrical service at the Insured Property.

96. Defendant Barbera violated W.Va. Code 33-11-4(9)(a) by misrepresenting the coverages available under the State Farm Policy when he represented to Plaintiffs there was no coverage under the State Farm Policy for the damage caused by the Fire Department to the electrical system at the Insured Property.

97. Defendant Barbera violated W.Va. Code 33-11-4(9)(a) by misrepresenting the coverages available under the State Farm Policy in telling Plaintiffs there was no coverage for code upgrades to Plaintiffs' electrical system necessary to complete repairs at the Insured Property following the Fire Loss.

98. Defendant Barbera, and the Defendant Class of Adjusters, on behalf of Defendant State Farm, violated W.Va. Code 33-11-4(9)(a) by misrepresenting the reasonable and necessary cost to repair or replace the property of Plaintiffs and other State Farm insureds with similar construction. Upon information and belief, Defendant Barbera and/or the Defendant Class of Adjusters violated W.Va. Code 33-11-4(9)(a) in the same fashion in connection with the claims of a class of other West Virginia insureds who, over the past ten years had homeowners insurance

coverage through Defendant State Farm and sustained damage to their real property located in West Virginia and were advised by Defendant Class of Adjusters that estimates based on New Construction pricing reflected the amount required to cover the reasonable and necessary cost to repair or replace their property with similar construction when said estimates were known to be insufficient to do so. Said conduct with respect to the State Farm Defendants and the Defendants Class of Adjusters constitutes their general business practice.

99. At all times relevant herein, the State Farm Defendants violated W.Va. Code 33-11-4(9)(b) by failing and refusing to timely respond to Plaintiffs' requests that their claims be paid in full and by failing and refusing to communicate with Plaintiffs' contractor regarding the scope and cost for the necessary repairs at the Insured Property.

100. At all times relevant herein, the State Farm Defendants failed and refused to conduct a prompt and reasonable investigation based on all available information, thereby violating applicable consumer protection statutes and regulations.

101. Specifically, the State Farm Defendant failed and refused to properly investigate the extensive electrical system, smoke, water, and widespread contents and dwelling damage to the Insured Property and failed and refused to investigate and handle their additional living expense claim to put Plaintiffs in reasonable living arrangements consistent with their normal standard of living.

102. At all times relevant herein, the State Farm Defendants refused, delayed, and denied payment of Plaintiffs' Fire Loss claims without conducting a prompt and reasonable investigation based on all available information, thereby violating applicable consumer protection statutes and regulations.

103. The State Farm Defendants failed and refused to properly estimate and pay Plaintiffs the total amounts owed under the State Farm Policy to cover the reasonable and necessary cost to repair or replace Plaintiff's property with similar construction. Upon information and belief, the State Farm Defendants and the Defendant Class of Adjusters violated W.Va. Code 33-11-4(9)(b) in the same fashion in connection with the claims of a class of other similarly situated West Virginia insureds over the past ten years who had similar homeowners insurance coverage through Defendant State Farm, who sustained damage to their real property located in West Virginia, and who received estimates and payment from Defendant State Farm based on New Construction pricing which did not reflect the amount necessary to cover the reasonable and necessary cost to repair or replace their property with similar construction. Said conduct with respect to a class of similarly situated West Virginia insureds constitutes the general business practice of the State Farm Defendants and the Defendant Class of Adjusters.

104. The State Farm Defendants failed and refused to pay Plaintiffs the full amount due for additional living expenses to place Plaintiffs in a position similar to how Plaintiffs' family lived prior to the Fire Loss.

105. The State Farm Defendants delayed and refused payment for electrical system damages and code upgrades at the Insured Property, despite knowing that the same were covered under the State Farm Policy, that Plaintiffs were without the funds necessary to cover the expenses themselves, and that payment of the covered expenses was necessary to repair or replace the Insured Property with similar construction.

106. The State Farm Defendants' delay and refusal to provide full payment for covered damages, including the electrical system and code upgrades, delayed the necessary work that must

be performed at the Insured Property and have resulted in additional damage to the Insured Property.

107. At all times relevant herein, Defendant State Farm failed and refused to adopt and/or implement reasonable standards for the prompt investigation of Plaintiffs' claims, and this constitutes a direct violation of W.Va. Code 33-11-4(9)(c).

108. Specifically, Defendant State Farm adopted a standard for the use of New Construction pricing instead of Restoration pricing for the repair of covered damage, which did not address the full reasonable and necessary cost to repair or replace Plaintiffs' property with similar construction. Upon information and belief, the State Farm Defendants and the Defendant Class of Adjusters violated W.Va. Code 33-11-4(9)(c) in the same fashion in connection with the claims of a class of other similarly situated West Virginia insureds over the past ten years who had similar homeowners insurance coverage through Defendant State Farm, who sustained damage to their real property located in West Virginia, and who received estimates and payment from Defendant State Farm based upon New Construction pricing which they knew did not reflect the amount necessary to address the reasonable and required cost to repair or replace their property with similar construction. Said conduct with respect to the class of similarly situated West Virginia insureds constitutes the general business practice of the State Farm Defendants and the Defendant Class of Adjusters.

109. The State Farm Defendant required Plaintiffs to get their own estimates for the damage to the Insured Property, despite Defendant State Farm's obligation to investigate and adjust Plaintiffs' Fire Loss claim and to provide first-party assistance to Plaintiffs in connection with the Fire Loss.

110. Then, when Plaintiffs obtained their own estimates for the remediation and repair of the Insured Property with similar construction, the State Farm Defendants claimed the estimates were invalid and refused to consider the estimates or to address the full cost to remediate and repair the Insured Property with similar construction.

111. At all times relevant herein, the State Farm Defendants failed and refused to acknowledge and act reasonably promptly upon communications with respect to Plaintiffs' claim, thereby violating applicable consumer protection statutes and regulations.

112. Specifically, the State Farm Defendants failed and refused to timely respond to Plaintiffs and their general contractor, Bobby English regarding damages and outstanding issues at the Insured Property even though they acknowledged to Plaintiffs that they had received the communications.

113. The State Farm Defendants failed and refused to timely respond to Plaintiffs' notification of claim by failing and refusing to provide them with notice of all available coverages and benefits available and due under the State Farm Policy, and by failing and refusing to provide Plaintiffs with first-party assistance.

114. At all times relevant herein, the State Farm Defendants and the Defendant Class of Adjusters failed and refused to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim and the claims of a class of other similarly situated West Virginia insureds over the past ten years when liability was reasonably clear under their State Farm Homeowners Policy, in violation of W.Va. Code §33-11-4(9)(f). Specifically, the State Farm Defendants failed and refused to offer and pay Plaintiffs and the class of other similarly situated West Virginia insureds over the past ten years the total amounts owed under their State Farm Policy to cover the reasonable and necessary cost to repair or replace their property with similar construction. Upon information and belief, the

State Farm Defendants and the Defendant Class of Adjusters violated W.Va. Code 33-11-4(9)(f) in the same fashion in connection with the claims of the class of other similarly situated West Virginia insureds over the past ten years who had similar insurance homeowners coverage through Defendant State Farm, who sustained damage to their real property located in West Virginia, and who received estimates and payments from State Farm based on New Construction pricing which they knew did not reflect the full amount required to address the reasonable and necessary cost to repair or replace their property with similar construction even though State Farm's liability to pay the same was reasonably clear. Said conduct with respect to a class of similarly situated West Virginia insureds constitutes the general business practice of the State Farm Defendants and the Defendant Class of Adjusters.

115. The State Farm Defendants have failed and refused to timely pay Plaintiffs for the full amount of the damage to their home and personal property at the Insured Property.

116. The State Farm Defendants failed and refused to pay Plaintiffs the actual benefits due to Plaintiffs in connection with their additional living expenses resulting from the Fire Loss and instead misrepresented to Plaintiffs that they were only entitled to limited amounts per month.

117. Through the State Farm Defendants' delay and their refusal to pay Plaintiffs' claims and the Defendant's failure and refusal to promptly and properly investigate the Plaintiffs' claims, the State Farm Defendants compelled Plaintiffs to retain counsel and to file this action in order to recover the full benefits due Plaintiffs under the State Farm Policy, thereby violating applicable consumer protection statutes and regulations, including W. Va. Code §33-11-4(9)(g).

118. The State Farm Defendants' conduct, as described hereinabove, is part of the State Farm Defendants and the Defendant Class of Adjusters' general business practice and constitutes

unfair claims settlement practices under applicable consumer protection statutes and regulations. In fact, in their *Notice of Removal*, the State Farm Defendants assert:

> State Farm has obtained estimating data from Verisk (the vendor from which it licenses Xactimate estimating software) reflecting that over the past ten years (since April 1, 2016), State Farm estimated over $120 million in repair damage costs using "new construction" Xactimate settings on over 700 claims in West Virginia.

(See the Notice of Removal (Doc. 1) at Para. 17.) This means that Defendant State Farm has engaged in an unfair claims settlement practice by using an estimating method in West Virginia which it knows will result in an estimate and claim payment which will not address the necessary cost to repair and/or replace its insureds' property with similar construction at least 700 times over the past ten years.

119. The conduct of the State Farm Defendants and the Defendant Class of Adjusters, as outlined hereinabove, was part of their general business practice and constitutes unfair claims settlement practices under West Virginia law and, specifically the provisions of W.Va. Code §33-11-4(9). Their conduct constitutes multiple violations of the Unfair Trade Practices Act and the accompanying insurance regulations in the handling of claims sufficient to establish that such conduct represents their general business practice as opposed to an isolated event. Upon information and belief, additional evidence of other violations of the Unfair Trade Practices Act by the State Farm Defendants during the handling of the claims of the Class of similarly situated West Virginia insureds over the last ten years can be obtained through discovery to establish the existence of their general business practice. In particular, Plaintiffs assert that, upon information and belief, the State Farm Defendants and the Defendant Class of Adjusters violated West Virginia law in the same fashion in connection with the claims of the class of other similarly situated West Virginia insureds over the past ten years who had similar homeowners insurance coverage through Defendant State Farm, who sustained damage to their real property located in West Virginia, and

who received estimates and payments from Defendant State Farm based on New Construction pricing which the Defendants knew did not reflect the amount required to cover the reasonable and necessary cost to repair or replace their property with similar construction.

120. As a direct and proximate result of the State Farm Defendants and the Defendant Class of Adjusters violations of W. Va. Code §33-11-4(9), Plaintiffs and the class of similarly situated West Virginia insureds over the last ten years, have suffered annoyance, inconvenience, aggravation, emotional distress and other consequential damages, and have been forced to incur attorney fees and the costs associated with pursuing their claims and instituting the present action in order to recover the insurance proceeds owed to them under their State Farm Policies.

121. From the initial notification of the Plaintiffs' claims and the claims of the class of similarly situated West Virginia insureds over the last ten years, the State Farm Defendants and the Defendant Class of Adjusters acted maliciously and intentionally, predetermined to delay and refuse Plaintiffs' claims under their State Farm Policies in violation of W. Va. Code § 33-11-4(9). In particular, they denied and refused to properly pay the claims even though they knew the claims were proper.

122. At all times relevant herein, the State Farm Defendants and the Defendant Class of Adjusters acted with the deliberate, intentional, and malicious intent to injure and harm Plaintiffs and the class of similarly situated West Virginia insureds over the last ten years, in violation of West Virginia law, as set forth hereinabove, all of which has proximately caused continuing economic and non-economic damages, and all of which warrants and commands an award of punitive damages.

123. Under the legal precedent established in *Jenkins v. JC Penney Cas. Ins. Co.* 280 S.E.2d 252 (W. Va. 1981), and *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W.Va. 1996),

this Court has jurisdiction over this action against the State Farm Defendants and the Defendant Class of Adjusters for their violations of West Virginia's consumer protection statutes and regulations, and Plaintiffs and the class of similarly situated West Virginia insureds over the last ten years are entitled to an award of damages against the Defendants for their legal fees and costs, net economic losses and other consequential and punitive damages.

**Count IV - Allegations under Rule 23 of the**
**<u>Federal Rules of Civil Procedure</u>**

124. Plaintiffs hereby restate and re-allege, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 123 of this Amended Complaint, as though fully restated and made a part of Count IV of this Amended Complaint.

125. Plaintiffs bring this action on behalf of themselves and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other similarly situated insureds of Defendant State Farm, as representatives of the following class (hereinafter referred to as "Plaintiff Class"):

Any person or entity:

1. Who is a citizen of West Virginia and was insured under a homeowners policy or policies issued by Defendant State Farm covering damage to real property located in West Virginia at any time from May 28, 2016, to the present;

2. Who, on or after May 28, 2016, suffered a covered cause of loss for damage to their existing insured real property in West Virginia while insured under a homewoners insurance policy issued by Defendant State Farm;

3. Who, on or after May 28, 2016, received an estimate or payment from or on behalf of Defendant State Farm for the cost of repairing and/or replacing the damage to their real property in West Virginia which was calculated and/or based on an estimate of their damages prepared by Defendant State Farm using New Construction pricing through Xactimate or any similar program which was knowingly less than the amount which was owed by Defendant State Farm for the amount necessary to address the reasonable and necessary

cost to repair or replace their property with similar construction; and

4. Who have not already reached a settlement with Defendant State Farm in connection with their claims resulting from State Farm's unlawful business practice of using New Construction pricing to determined the amount required to repair and/or replace the insured's damage to real property in West Virginia.

126. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs, on behalf of the Plaintiff Class, seek class certification of claims for breach of contract, bad faith, and violations of the Unfair Trade Practices Act as a business practice against Defendant State Farm to recover the additional amounts owed by Defendant State Farm for the full cost of repairing or replacing the damage to the West Virginia real property of the Plaintiff Class based upon the reasonable and necessary cost to repair or replace the property of the Plainitff Class with similar construction.

127. Furthermore, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs, on behalf of the Plaintiff  Class, seek class certification of claims for the net economic losses (lost interest) sustained by the Defendant Class  as a result of Defendant State Farm's breach of contract, bad faith, and violations of the Unfair Trade Practices Act as a business practice.

128. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs, on behalf of the Plaintiff Class, seek class certification of a claim for violations of W. Va. Code § 33-11-4(9) against the State Farm Defendants and the Defendant Class of Adjusters who violated West Virginia law during their handling of the claims of the PlaintiffClass. In particular, Plaintiffs assert that the State Farm Defendants and the Defendant Class of Adjusters violated W.Va. Code 33-11-4(9)(a) when they misrepresented the reasonable and necessary cost to repair or replace the real property of Plaintiff Class with similar construction; violated W.Va. Code 33-11-4(9)(b) when they

investigated, estimated and made payment of the claims of Plaintiff Class based on the unlawful business practice of using New Construction pricing which they knew did not reflect the full amounts required to address the reasonable and necessary cost to repair or replace the property of Plaintiff Class with similar construction; and violated W.Va. Code 33-11-4(9)(f) when they knowingly refused to pay the Plaintiff Class the reasonable and necessary cost to repair or replace their property with similar construction when Defendant State Farm's liability to pay the same was reasonably clear. Upon information and belief, the State Farm Defendants and the Defendant Class of Adjusters engaged in the same conduct with respect to the homeowners property damage insurance claims of Plaintiff Class and caused each member of the Plaintiff Class to sustain similar damages by reducing the amounts paid to each member of Plaintiff Class by Defendant State Farm through the exercise of the same unlawful business practice.

129. Plaintiffs seek a class determination of the disputed issue regarding Defendant State Farm's obligation to determined and pay insurance benefits for the full cost of repairing and/or replacing damage to Plaintiff Class' real property in West Virginia without exercising the same unlawful business practice of using New Construction pricing under Xactimate or any similar program to knowingly reduce the Defendants' estimate and payment for the cost to repair and/or replace Plaintiff Class' real property in West Virginia.

130. While Plaintiffs do not presently possess information sufficient to identify the exact size of the Plaintiff Class, Plaintiffs reasonably believe the total size is sufficiently numerous that joinder of all members would be impracticable and the State Farm Defendants have represented to the Court in their *Notice of Removal* that the total number of potential Plaintiff Class members is greater than 700.

131. The claims of Plaintiffs with respect to Defendants' breach of contract, bad faith and violation of the Unfair Trade Practices Act as a business practice by using New Construction pricing to knowingly reduce the amount estimated and paid for the cost to repair or replace real property in West Virginia are typical of the claims of Plaintiff Class on that issue, and the Plaintiffs will fairly and adequately protect the interests of Plaintiff Class.

132. Upon information and belief, the State Farm Defendants and the Defendant Class of Adjusters maintained, implemented and followed a common policy and practice of using New Construction pricing rather than Restoration pricing to estimate and make payment of the cost to repair and/or replace the real property of Plaintiffs and Plaintiff Class with similar construction when handling West Virginia property damage claims, which knowingly resulted in deficient estimates and payments to Plaintiffs and Plaintiff Class.

133. Upon information and belief, the State Farm Defendants and the Defendant Class of Adjusters applied their common policy and practice of using New Construction pricing rather than Restoration pricing in substantially the same manner across the Plaintiff Class to knowingly reduce their estimates and payments for damage to real property in West Virginia and the use of the policy and practice resulted in Plaintiffs and Plaintiff Class receiving estimates and payments which were knowingly insufficient to address the full amount required to pay for the reasonable and necessary cost to repair and/or replace the real property of Plaintiffs and Plaintiff Class with similar construction.

134. The liability question common to Plaintiffs and Plaintiff Class is whether the State Farm Defendants and the Defendant Class of Adjusters' use of New Construction pricing rather than Restoration pricing to knowingly reduce estimates and payments for damage to real property in West Virginia and avoid paying the full amount required for the reasonable and necessary cost

to repair or replace the real property of Plaintiffs and Plaintiff Class with similar construction breached the terms of the applicable State Farm Policies and violated W.Va. Code 33-11-4(9) when said calculations resulted in Plaintiffs and Plaintiff Class receiving estimates and payments which were knowingly insufficient to cover the reasonable and necessary cost to repair and/or replace the real property of Plaintiffs and Plaintiff Class with similar construction. That question is capable of common resolution because, upon information and belief, the State Farm Defendants and the Defendant Class of Adjusters utilized the same unlawful business practice to reduce the amounts estimated and paid by Defendant State Farm to sums knowingly insufficient to cover the full cost to repair and/or replace the damage to the real property of Plaintiffs and Plaintiff Class with similar construction.

135. All of the proposed Plaintiff Class members were damaged in the same legally cognizable way as Plaintiffs by the same unlawful business practice of the State Farm Defendants and the Defendant Class of Adjusters.

136. Individual damage calculations do not defeat class treatment because the individual amount of damages and economic loss for each Plaintiff Class member can reasonably be determined through the use of Restoration pricing using the same Xactimate software to determine the reasonable and necessary cost to repair or replace the property of each Plaintiff Class member with similar construction. While the conduct of the State Farm Defendants and the Defendant Class of Adjusters caused Plaintiffs and Plaintiff Class to suffer individualized damages, the nature of the economic loss sustained is the same and their individual damages are reasonably capable of calculation.

137. Plaintiffs have no conflict with any other Plaintiff Class member and have retained competent counsel experienced in insurance and tort litigation.

138. The State Farm Defendants and the Defendant Class of Adjusters have, upon information and belief, acted or refused to act on grounds generally applicable to the Plaintiff Class, thereby making relief with respect to Plaintiff Class as a whole appropriate.

139. The prosecution of separate actions by individual members of Plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of Plaintiff Class, which would establish incompatible standards of conduct for Defendants or adjudications with respect to individual members of Plaintiff Class and which would, as a practical matter, be dispositive of the interests of other members of Plaintiff Class not parties to the adjudications, or which would substantially impair or impede their ability to protect their interests.

140. Common questions of law and fact exist, including:

a. The relevant contractual and legal duties which the State Farm Defendants and the Defendant Class of Adjusters owed to Plaintiffs and Plaintiff Class relative to Defendant State Farm's use of New Construction pricing rather than Restoration pricing as the basis to estimate and pay the reasonable and necessary cost to repair and/or replace the real property in West Virginia of Plaintiffs and Plaintiff Class with similar construction;

b. Whether Defendant State Farm breached its contractual and legal duties owed to Plaintiffs and Plaintiff Class by using New Construction pricing rather than Restoration pricing as the basis to estimate and pay the reasonable and necessary cost to repair and/or replace the real property of Plaintiffs and Plaintiff Class with similar construction;

c. Whether the State Farm Defendants and the Defendant Class of Adjusters violated W. Va. Code § 33-11-4(9) by using New Construction pricing rather than Restoration pricing as the basis to estimate and pay the reasonable and necessary cost to repair and/or replace the real property of Plaintiffs and Plaintiff Class with similar construction;

d. Whether Plaintiffs and Plaintiff Class are entitled to damages arising from the State Farm Defendants and the Defendant Class of Adjusters' use of New Construction pricing rather

than Restoration pricing as the basis to estimate and pay the reasonable and necessary cost to repair or replace the property of Plaintiffs and Plaintiff Class with similar construction;

e. Whether Plaintiffs and Plaintiff Class suffered a legally cognizable injury; and

e. The appropriate form of class-wide relief

141. The aforementioned questions of law and fact are common to Plaintiff Class and predominate over any questions affecting only individual Plaintiff Class members. They are capable of class-wide resolution because their answers will resolve issues central to the validity of each Plaintiff Class member's claims in one stroke.

142. Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein, and a class action provides the most efficient method for the enforcement of the rights of Plaintiffs, Plaintiff Class members, the State Farm Defendants and Defendant Class of Adjusters.

143. Plaintiffs know of no unusual problems of management and notice with respect to Plaintiff Class.

144. Plaintiffs believe the total size of Plaintiff Class is sufficiently numerous that joinder of all members would be impracticable as they reasonably belief Plaintiff Class exceeds 700 members.

145. Plaintiffs' claims are typical of the claims of the proposed Plaintiff Class because Plaintiffs and the proposed Plaintiff Class members were subjected to the same challenged conduct and assert the same legal theories.

146. Plaintiffs' damages may differ in amount from those of the other class members, but Plaintiffs' claims arise from the same course of conduct and depend upon the same common liability questions.

147. Plaintiffs' claims raised against the State Farm Defendants concerning the use of New Construction pricing rather than Restoration pricing when calculating the reasonable and necessary cost to repair or replace the property of Plaintiffs with similar construction are typical of the claims of Plaintiff Class such that Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class.

148. Common questions predominate over any questions affecting only individual class members. The principle issue is whether the State Farm Defendants and the Defendant Class of Adjusters improperly used New Construction pricing rather than Restoration pricing as the basis to estimate and pay the reasonable and necessary cost to repair and/or replace the real property in West Virginia of Plaintiffs and Plaintiff Class with similar construction to knowingly reduce the amounts Defendant State Farm would pay for the reasonable and necessary cost to repair or replace the subject property with similar construction as required under Defendant State Farm's Homeowners Policies, thereby breaching Defendants' contractual land other legal duties.

149. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because:

a. Plaintiff Class members' individual damages may be too small to justify separate litigation;

b. Separate actions would risk inconsistent adjudications and inefficient duplication; and

c. Defendant State Farm's records and common proof permit class-wide adjudication of liability.

**WHEREFORE**, Plaintiffs, individually and/or on behalf of all similarly situated insureds of Defendant State Farm (Plaintiff Class), demand judgment as follows:

a) An award to Plaintiffs of compensatory damages against Defendant State Farm in an amount in excess of this Court's jurisdictional limits, as proven by the evidence at trial, arising from Defendant State Farm's breach of its insurance contract, including all consequential damages, recoverable attorney fees, and costs sustained as a result of Defendant State Farm's breach of contract;

b) An award to Plaintiffs of compensatory damages against Defendant State Farm in excess of this Court's jurisdictional limits, as proven by the evidence at trial, in connection with Defendant State Farm's bad faith and its breach of its common-law duty of good faith and fair dealing to Plaintiffs, including all damages, attorney fees and costs, and net economic losses sustained by the Plaintiffs as a result of Defendant State Farm's bad faith;

c) An award to Plaintiffs of compensatory damages against the State Farm Defendants in an amount in excess of this Court's jurisdictional limits, as proven by the evidence at trial, in connection with the State Farm Defendants' violation of the Unfair Trade Practices Act as a business practice in the handling of Plaintiffs' claims, including all consequential and resulting damages, attorney fees and costs and net economic losses sustained as a result of the State Farm Defendants' actions;

d) An award to Plaintiffs of punitive damages against Defendant State Farm in connection with its actual malice in engaging in bad faith and its breach of its common-law duty of good faith and fair dealing to Plaintiffs in connection with its handling of Plaintiffs' claim;

e) An award to Plaintiffs of punitive damages against the State Farm Defendants in connection with their actual malice in violating the Unfair Trade Practices Act as a business practice in the handling of Plaintiffs' claim;

f) An award to the members of Plaintiff Class of compensatory damages against Defendant State Farm sufficient to compensate the members of the Class for the additional amounts due for the cost of repairing and/or replacing the damage to their real property in West Virginia of the members of Plaintiff Class, along with the net economic losses (lost interest) sustained by the members of Plaintiff Class as a result of Defendant State Farm's actions;

g) An award to the members of Plaintiff Class of compensatory damages against the State Farm Defendants and the Defendant Class of Adjusters sufficient to compensate the members of Plaintiff Class for the Defendant State Farm's violation of its duty of good faith and fair dealing and against the State Farm Defendants and Defendant Class of Adjusters for their violation of W.Va. Code 33-11-4(9) as a business practice;

h) An award of pre-judgment and post-judgment interest, litigation and court costs, and attorney fees; and

i) Such further and additional relief as the Court and/or the Jury determines to be just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

**CHARLES BARKER AND MELISSA BARKER, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED INSUREDS**

**By counsel,**

/s/ Brent K. Kesner
Brent K. Kesner (WVSB #2022)
Anthony E. Nortz (WVSB #12944)
Kevin C. Kidd (WVSB #13642)
**Kesner & Kesner, PLLC**
112 Capitol Street
Charleston, WV 25329
*Phone:* (304) 345-5200
*Fax:* (304) 345-5265
bkesner@kesnerlaw.com
anortz@kesnerlaw.com
kkidd@kesnerlaw.com

and

/s/ Robert V. Berthold, Jr.
Robert V. Berthold, Jr. (WVSB #326)
Robert V. Berthold, III (WVSB #11065)
**Berthold Law Firm, PLLC**
208 Capitol Street
P.O. Box 3508
Charleston, WV 25335
*Phone:* (304) 345-5700
*Fax:* (304) 345-5703
rvb@bertholdlaw.com
rvb3@bertholdlaw.com